MOODY, Respondent, vs. STREISSGUTH CLOTHING COMPANY, Appellant.

*April 12 — April 30, 1897.*

*Master and servant: "General manager:" Discretion as to manner of performing duties: Condonation of breach of duty.*

1. Where the complaint in an action to recover damages for breach of a contract of employment alleged that the defendant hired the plaintiff "as manager of its business," and the answer admitted that he "agreed to assume charge of and to manage the defendant's business and store," the plaintiff, as matter of law, was something more than a mere manager of a store, and had some discretion as to the manner of the discharge of his duties, including the time and manner of advertising, and the employment of his time; and occasional absences while actually employed in good faith in what he deemed to be the furtherance of the interests of defendant's business would afford no ground for his discharge.

2. The action of an employer in retaining an employee after knowledge of a breach of duty, with an admonition "not to let it happen again," is a condonation of the breach.

APPEAL from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Affirmed.*

Action for damages for breach of a contract of employment. On or about May 1, 1895, the parties to this action entered into a contract whereby it was agreed that the plaintiff should render his services to the defendant company, as manager of its business, at the city of Milwaukee, for the term of one year, for which services he was to receive a salary of $2,500. Plaintiff entered upon his employment under this contract, and so continued until October 7, 1895, when he was discharged by the defendant.

It was claimed by the defendant that among other duties of plaintiff as such business manager " was that of preparing for the public press of the city of Milwaukee, on certain days, the advertisements of the defendant company, and to close and securely lock the store of the defendant company each and every night;" that on October 4, 1895, the plaintiff failed to prepare such advertisements, and on or about the same date failed to close and lock the store. In the amended answer it was alleged that the plaintiff failed to attend to his duties, in absenting himself from the store during business hours. It seems there was no express agreement as to what should be the specific duties of the plaintiff under the contract. There is some conflict of testimony as to the manner in which plaintiff performed the duties of his employment. While it is urged that it was plaintiff's duty to close and lock the store each night, there is evidence tending to show that some others of the employees carried keys; and plaintiff testified that, though he usually attended to that duty, he did not do it all the time. There seems to have been no agreement, at the time of making the contract, that the plaintiff should prepare the advertisements for the press, but, on request of the president of the defendant company, the plaintiff had, for some time preceding his discharge, been accustomed to prepare such advertisements. He testifies

that the president of the company "supervised, corrected,. and changed them to suit himself." It is not claimed that the plaintiff prepared the advertisements for October 4, 1895, and it does not appear in evidence whether or. not they were prepared at all for that date. Several witnesses for the defense testified that plaintiff was absent a number of times during business hours. The absences were admitted by plaintiff, who claimed that he was absent at such times on account of the business of the defendant, except on two occasions,. when he was sick, and two other occasions, when he was absent with defendant's permission. The president of the defendant company testified that plaintiff had no business to perform for the company outside of the store.

On or about January 29, 1896, plaintiff secured employment in St. Louis at a salary of $1,650 per annum. He testified to having sought employment in Milwaukee and Chicago: At the time of the trial the defendant had paid to plaintiff on the contract $398.50. Plaintiff sued for $2,101.50, the residue of the full year's salary. The jury found for plaintiff in the sum of $1,689. From a judgment on this verdict the defendant appeals.

For the appellant there were briefs by *McVicker & Kehr*, attorneys, and *Elliott & Hickox*, of counsel, and oral argument by *E. A. Kehr* and *C. T. Hickox*. To the point that the court had no right to assume judicial knowledge of the rights, powers, and duties of the plaintiff's position, they cited *Swazey v. Union Mfg. Co.* 42 Conn. 556; *Brown v. M., K. & T. R. Co.* 67 Mo. 122.

*F. A. Geiger*, for the respondent.

NEWMAN, J. The complaint alleges that the plaintiff hired to the defendant "as manager of its business at the city of Milwaukee." The answer admits by express averment that by the agreement the plaintiff "agreed to assume charge of and to manage the defendant's business and store in the city

·of Milwaukee." The terms of the contract do not otherwise appear. So the capacity in which the plaintiff was employed was not open to controversy by evidence. He was more than the mere manager of the store.

On the trial it was sought by the defendant to limit his duties to the mere management of the store,— to something in the nature of the duties of a mere floor manager. And to show that he failed in the due performance of such duties, it was shown that on several occasions he was absent from the store during business hours. These absences the plaintiff excused by saying that he deemed them reasonable and necessary, and that they were employed about the necessary conduct and management of the defendant's business. The court, as bearing upon this contention, instructed the jury, in substance, that the plaintiff, as general manager of the defendant's business, had some discretion in the manner of the discharge of his duties and the employment of his time, and might properly be absent from the store at such times and on such occasions as, in his opinion, the interests of the defendant's business required; that his relation to the defendant and its business was not that of a mere clerk or workman. The charge is of considerable length, and not necessary to be set out verbatim. The general tenor is as stated. It is, no doubt, in the line of the true theory of the case, and free from substantial errors. The difficulty with the defendant's contention is that it is in conflict with its express admission in its answer. Of course, the general manager of a business must have a discretion as to the manner of its conduct and the most advantageous use of his own time. These absences from the store seem to have been the principal ground for plaintiff's discharge. If they were actually occasioned by, and employed in good faith in, what the plaintiff deemed to be the furtherance of the interests of the defendant's business, they could afford no ground for plaintiff's discharge. And so the court, in effect, charged

the jury. The testimony was sufficient to support the verdict on that contention.

On one or more occasions the plaintiff failed to lock the store when closed at night. He says he left another party to lock the store. It would seem that the general manager of a business would have power to delegate to some other servant the performance of so simple an office. Nothing in the contract made it the duty of the plaintiff in person to lock the store. But he was not discharged for this shortcoming. He was merely admonished " not to let it happen again." This was, no doubt, a condonation of the alleged fault.

It was alleged, too, that the plaintiff sometimes failed to attend properly to the advertising of the business. The time and manner of the advertising were, no doubt, at least to some extent, left to the judgment and discretion of the general manager of the business, in the absence of any contract provision or binding regulation governing the matter. It does not clearly appear that this discretion was abused. The contention was properly submitted to the jury, and the verdict on that point is supported by the evidence.

No important error is found in the record.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.